NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MENACHEM SCHMULOVICH, et al.,** | Civil Action No. 07-597 (FLW) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| **1161 RT. 9 LLC, et al.,** | |
| Defendants. | |

**I.   INTRODUCTION**

Currently before the Court is Defendants 1161 Rt. 9. LLC (the "LLC"), Ovadi Malchi, Zichroni Malchi and Ofer Malchi's Motion to Quash the subpoena served upon Wachovia Bank by Plaintiffs Menachem and Tova Schmulovich (collectively "Plaintiffs"). The Court considered this Motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated more fully below, Defendants' Motion to Quash is GRANTED.

**II.   STATEMENT OF FACTS**

In Fall 2004, Plaintiffs and Defendants Ovadi Malchi ("Ovadi") and Zichroni Malchi ("Zichroni") (collectively "Defendants") formed the LLC for the purpose of purchasing the property located at 1161 Route 9, Lakewood, New Jersey (the "LLC Property"). (Def. Br. at 1). This case arises out of various causes of action related to Defendants' alleged breach of the LLC partnership agreement entered into between them and Plaintiffs.[1] (*Id*. at 1). Plaintiffs seek to

---

[1] In addition to their claims regarding the LLC, Plaintiffs also alleged various causes of action concerning Plaintiffs' purchase from Defendant Ofer Malchi ("Ofer") of a property located at 16 South Clinton Avenue, Lakewood, New Jersey in their Second Amended Complaint. However, on February 14, 2008, the Court was notified in writing by Plaintiffs' counsel that Plaintiffs and Defendants resolved their dispute with respect to the 16 South Clinton Avenue

prove that Defendants breached the LLC agreement and thereby cheated Plaintiff Menachem Schmulovich ("Schmulovich") out of a substantial sum of money. Specifically, Plaintiffs in their Second Amended Complaint assert that Defendants secretly removed Schmulovich's name from the LLC, never contributed to LLC, never contributed to the purchase price of the LLC Property or other costs, expenses and improvements related thereto, fraudulently obtained mortgages on the LLC Property while retaining the proceeds therefrom for themselves and attempted to sell the LLC Property in their own name to a third party.

Earlier in this matter during discovery, Plaintiffs served subpoenas on several banks (among others), seeking information that would disclose the location of the contested funds exchanged between the parties in transactions concerning the LLC and the LLC Property. While Defendants moved to quash these subpoenas, which required the banks on which they were served to produce documents pertaining to Defendants' personal bank accounts as well as the personal bank accounts of Defendants' family members and/or Defendants' business entities other than the LLC, the Court denied Defendants' Motion, finding that the information sought by the subpoenas "may result in information that could verify or disprove the existence of transactions through accounts other than those belonging to the LLC, and consequently whether any breach of the partnership agreement occurred." *Schmulovich v. 1161 RT. 9 LLC*, Civil Action No. 07-597 (FLW), 2007 WL 2362598, at *3 (D.N.J. Aug. 15, 2007).

Plaintiffs have now served a subpoena on Wachovia Bank, requesting the following:

> 1. Any and all documents, including, but not limited to, new account documents, checks (back and front), cancelled checks,

---

property. Thus, Plaintiffs' remaining claims pertain solely to their causes of action related to the LLC.

>correspondence, customer agreements, annual and monthly account statements, holding pages, memorandas, notes, reports and financial statements that pertain to any and all accounts (single and/or joint) held by Ovadi Malchi, and/or Ofer Malchi, and/or Zichroni Malchi maintained at Wachovia Bank, or any corporate or partnership accounts in which these individuals have an interest;
>
>2.    Any and all documents pertaining to Wachovia Bank Account No. 070583134, including, but not limited to, account documents, checks, cancelled checks, correspondence, customer agreements, statements, options, agreements, futures agreements, commodity agreements, margin agreements, annual and monthly account statements, holding pages, memorandas, notes, reports and financial statements.

Defendants move to quash the subpoena served on Wachovia Bank, claiming that Plaintiffs have embarked upon an impermissible fishing expedition. (Def. Br. at 2). Specifically, Defendants argue that the subpoena must be quashed because the Wachovia Bank records, which concern a mortgage made by Ovadi to Plaintiffs to be used by Plaintiffs to finance their purchase of a property located at 245 Second Street, Lakewood, New Jersey (the Second Street Property), are "completely unrelated to the case at bar." (*Id*. at 6). Defendants note that Plaintiffs "have asserted no claims related to the mortgage" on the Second Street Property. (*Id*. at 3). Further, Defendants argue that Plaintiffs have failed to demonstrate the relevancy of the subpoenaed documents, which pertain "to matters that are completely unrelated to the case at bar[,]" to this action. (*Id*. at 6). Moreover, Defendants point out that the very information that Plaintiffs currently seek from Wachovia Bank has already been produced by Defendants. (*Id*. at 7). In this regard, Defendants note that they provided Plaintiffs with copies of both the fronts and backs of two checks, one from Commerce Bank and the second from Wachovia Bank, to establish that Ovadi loaned money to Plaintiffs to finance Plaintiffs' purchase of the Second Street Property.

3

(Def. Reply at 3-4). Defendants argue that the copies of the checks provided to Plaintiffs establish that they were not only made payable to Mark Sininsky, Esq., the attorney representing Plaintiffs in their purchase of the Second Street Property, but were also deposited into Mr. Sininsky's attorney trust account. (*Id*.) Given the fact that there are no claims pending in this litigation regarding the Second Street Property coupled with the fact that Defendants produced copies of both the front and back of checks evidencing that Ovadi did in fact loan money to Plaintiffs to finance their purchase of the Second Street Property along with the fact that the checks demonstrate that the loaned funds were deposited in Plaintiffs then attorney's trust account, Defendants argue that their Motion to Quash must be granted. (*Id*. at 5).

      Plaintiffs disagree with Defendants' assertions and oppose Defendants' Motion to Quash. Plaintiffs state that Ovadi claims to have advanced a total of $640,000 to Schmulovich as outlined in the schedule of purported loans made by Ovadi to Schmulovich, which Plaintiffs attached to their brief. (Pl. Opp. Br. at 1). Schmulovich denies ever receiving these funds. (*Id*.) Plaintiffs note that Item 1 of Ovadi's purported loan schedule reflects that Ovadi gave Schmulovich a mortgage in the amount of $350,000 for the Second Street Property. (*Id*.) Plaintiffs state that recently, Ovadi provided Plaintiffs with two checks, one drawn on Commerce Bank in the amount of $200,000 and the second drawn on Ovadi's Wachovia Bank account in the amount of $100,000. (*Id*. at 1-2). Plaintiffs note that both checks were made payable to the late Mr. Sininsky, whom Plaintiffs describe as Ovadi's attorney. Plaintiffs state that Ovadi has claimed that the aforementioned $300,000 reflects his funding of the $350,000 mortgage recorded against the Second Street Property. (*Id*. at 2). Plaintiffs claim that Schmulovich never received the proceeds of Ovadi's purported $350,000 mortgage, but that, nevertheless, in 2004 he

4

repaid this mortgage in the total sum of $380,000.  Schmulovich has demanded repayment of the $380,000 from Ovadi.  (*Id*.)

Plaintiffs argue that "[i]t is necessary to have the Wachovia and Commerce Bank records for these transactions to investigate the source of the $300,000 funding." (*Id*.)  Plaintiffs argue that this is especially true in light of the fact that Mr. Sininsky's deposition testimony established that he did not have any current recollection of (1) receiving funds from Ovadi, though Mr. Sininsky's attorney trust account entries reflect $303,000 from Schmulovich and that Mr. Sininsky received one check; (2) any facts concerning the purported difference between the $300,000 purchase price of the Second Street Property and Ovadi's $350,000 mortgage; and (3) whether Ovadi's purported $350,000 mortgage was utilized in the acquisition of the Second Street Property.  (*Id*.)  Further, Plaintiffs argue that Schmulovich paid $400,000 cash to purchase the Second Street Property and that he obtained the $400,000 from the following sources: (1) proceeds from the refinance of Schmulovich's personal residence at 1258 East 27th Street, Brooklyn, New York for $200,000; and (2) a loan from Peter Weiss in the amount of $220,000. (*Id*.)  Plaintiffs believe that "Ovadi utilized Schmulovich's funds and fraudulently had Schmulovich sign a mortgage without receiving mortgage proceeds." (*Id*.)  Plaintiffs note that the mortgage was prepared by Mr. Sininsky at Ovadi's direction.  Plaintiffs claim that Defendants' Motion to Quash must be denied because "[f]ull disclosure of Ovadi's bank accounts must be made to see the source of Ovadi's purported funds that he claimed to have loaned to Schmulovich." (*Id*.)

Plaintiffs also claim that they need access to the subpoenaed information in order to determine the source of other funds that Ovadi purportedly loaned to Schmulovich.  For example,

5

Plaintiffs point to Items 2 and 7 of Ovadi's loan schedule, which reflect loans on LKTV leases totaling $50,000.  Plaintiffs argue that "[i]t is necessary to see the financial records that support the $50,000 payment to Schmulovich and the source of these funds." (*Id*. at 3).

Similarly, Plaintiffs seek the subpoenaed information to determine the source of a purported $100,000 second mortgage on Schmulovich's Brooklyn residence, which is reflected as Item 3 of Ovadi's loan schedule.  Schmulovich claims that Ovadi never lent him the $100,000. (*Id*.)  Plaintiffs also argue that their signatures on the July 31, 2003 mortgage note for the aforementioned $100,000 second mortgage are forgeries, and note that this "mortgage note is dated the same date as the $350,000 mortgage that Schmulovich states was never funded by Ovadi." (*Id*.)  Further, Plaintiffs claim that despite the fact that Ovadi in support of his position submitted a Wachovia Bank statement in which the $100,000 is depicted as a counter withdrawal, recently Wachovia Bank sent Plaintiffs a copy of a withdrawal from Ovadi's account reflecting a $100,000 payment to Ovadi, which Plaintiffs assert is clearly not a funding to Schmulovich. (*Id*.)  Again, Plaintiffs claim "it is necessary to follow the money and determine what was the source of these funds."[2] (*Id*.)

Plaintiffs conclude by arguing that Ovadi has encumbered the LLC Property with a $360,000 mortgage which he received.  Plaintiffs claim that "[i]t is necessary for Ovadi to account for monies received and the disbursements and payments made and production of Ovadi's bank records should be made forthwith." (*Id*. at 4).  Plaintiffs assert that "Ovadi has

---

[2]Plaintiffs also assert that on April 28, 2008, Ovadi "in furtherance of his fraudulent acts," instituted foreclosure proceedings against Plaintiffs in state court in which Ovadi claimed that Plaintiffs owed him $100,000. (Pl. Opp. Br. at 3).  Further, Plaintiffs note that after they sent a sanction notification to Ovadi's attorneys, Ovadi's attorneys filed a Discharge of Lis Pendens. *Id*.

taken over $886,000 from Schmulovich and production of Ovadi's bank records may provide where he utilized these funds." Plaintiffs argue that they want to follow the money and therefore request that the Court deny Defendants' Motion to Quash. (*Id.*)

## III. LEGAL ANALYSIS

### A. Legal Standard

Pursuant to FED.R.CIV.P. 26(b), the scope of discovery in federal litigation is broad. In fact, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED.R.CIV.P. 26(b)(1). Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The party resisting discovery bears the burden of establishing that discovery should not be had either because the information sought is not relevant or because even though relevant, a protective order is warranted. *See Gutierrez v. Johnson & Johnson, Inc.*, Civil Action No. 01-5302 (WHW), 2002 U.S. Dist. LEXIS 15418, at *10 (D.N.J. Aug. 12, 2002). Pursuant to FED.R.CIV.P. 26(c), where the resisting party has established good cause, the Court has discretion to issue a protective order that imposes limitations on the extent and scope of otherwise relevant discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden, or expense[.]"

Subpoenas served in accordance with FED.R.CIV.P. 45 must fall within the scope of discovery set forth in FED.R.CIV.P. 26(b)(1). *See Schmulovich*, 2007 WL 2362598, at *2 (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)). If a subpoena falls outside of the broad scope of discovery permitted by FED.R.CIV.P. 26(b)(1), then, upon a timely motion, the Court has authority to quash or modify same. FED.R.CIV.P. 45(c)(3). Further,

7

pursuant to Rule 45(c)(3)(A), the Court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

### B. Standing

Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed. *See Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434-435 (E.D. Pa. 2001). However, a party to an action has standing to quash or modify a non-party subpoena where the party seeking to quash or modify the subpoena claims a privilege or privacy interest in the subpoenaed information. *Id.*; *see DIRECTV, Inc. v. Richards*, No. Civ. 03-5606 (GEB), 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (citing *Catskill Dev. , LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002)). Here, Defendants assert a personal privilege with respect to their bank account records. Personal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information. See *DIRECTV,* 2005 WL 1514187, at *1; *Transcor, Inc.*, 212 F.R.D. at 590-91. The Court therefore finds that Defendants have standing to move to Quash the subpoena served on Wachovia Bank.

### C. Plaintiffs Have Failed to Establish that the Subpoena Seeks Relevant Information

Despite the broad scope of discovery permitted in federal litigation, the Court finds that Plaintiffs have failed to establish that the information they seek through the subpoena served upon Wachovia Bank is relevant to the case at hand. Unlike with Plaintiffs' previous bank subpoenas, here, Plaintiffs fail to show how the subpoenaed information will assist them in

pursuing their claims regarding the LLC and the LLC Property or defend against those raised against them by Defendants in this litigation.

Plaintiffs claim that they "want[] to follow the money." (Pl. Opp. Br. at 4 (emphasis in original)). However, Plaintiffs do not articulate how the money they seek to follow is relevant to this litigation. Plaintiffs claim that "Ovadi has encumbered the 1161 Route 9 property with a $360,000 mortgage which he received" and that "[t]he cost of the debt service on the $360,000 mortgage (interest and principal) has been paid through collections of rent received from the Route 9 tenant for a $360,000 Ovadi mortgage obligation." (*Id*.) Plaintiffs then argue that "[i]t is necessary for Ovadi to account for monies received and the disbursements and payments made" and consequently, that "production of Ovadi's bank records should be made forthwith." (*Id*.) Plaintiffs, however, fail to explain how the funds they seek to explore through the subpoena at issue relate to the LLC or the LLC Property. Indeed, by Plaintiffs' own admissions the money Plaintiffs want to follow bear on loans allegedly made by Ovadi to Schmulovich for the Second Street Property, LKTV leases and Schmulovich's personal residence in Brooklyn. (*Id*. at 1-4). While Plaintiffs claim that these loans were fraudulent, Plaintiffs have asserted no allegations regarding them in this litigation. Moreover, in their oppositions to Defendants' Motion to Quash, Plaintiffs have not argued that the purported loans for the Second Street Property, LKTV leases or Plaintiffs' Brooklyn residence were used in connection with the purchase of the LLC Property or in any other way relate to Plaintiffs' claims regarding the LLC and/or the LLC Property, which are the sole claims at issue here.

Notwithstanding the broad scope of discovery, information must be relevant before the Court will require its production. Here it was Plaintiffs' responsibility to establish in the first

instance that the subpoenaed information is relevant to their claims or defenses in this litigation. Plaintiffs' opposition to Defendants' Motion, however, leaves the Court to speculate how the purported loans regarding the Second Street Property, the LKTV leases and Schmulovich's Brooklyn residence impact Plaintiffs' claims or defenses regarding the LLC and the LLC property. While the Court could certainly hypothecate about how the subpoenaed information is relevant to this case, it is not appropriate for the Court to use conjuncture to develop a theory of relevance. Rather, it was Plaintiffs' responsibility to set forth how the subpoenaed information is relevant to this litigation. Plaintiffs did not carry their burden. Given Plaintiffs' failure to establish why, in the context of this litigation, which involves only the LLC and the LLC Property, it is necessary to investigate the source of Ovadi's funding of the $300,000 related to the Second Street Property, the $50,000 related to the LKTV leases, or the $100,000 related to Schmulovich's Brooklyn residence, the Court must grant Defendants' Motion to Quash.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Quash the subpoena served on Wachovia Bank is GRANTED. An appropriate Order follows.

Dated: October 10, 2008

                                          s/Tonianne J. Bongiovanni
                                    **HONORABLE TONIANNE J. BONGIOVANNI**
                                    **UNITED STATES MAGISTRATE JUDGE**